TANDY S. WILBUR AND SHIRLEY M. WILBUR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilbur v. Commissioner
Docket No. 5615-78.
United States Tax Court
T.C. Memo 1984-576; 1984 Tax Ct. Memo LEXIS 99; 48 T.C.M. (CCH) 1498; T.C.M. (RIA) 84576; October 30, 1984. Richard M. Berley,Mason D. Morisset, and Robert L. Pirtle for the petitioners. Thomas N. Tomashek, for the respondent. WILBUR MEMORANDUM OPINION WILBUR, Judge: TheCommissioner determined the following deficiencies and additions to tax in the petitioners' Federal income taxes: Sec. 6651(a) [1]
Sec. 6653(a)
Petitioner
Year
Deficiency
Addition to Tax
Addition to Tax
Tandy Wilbur &
1971
$5,767
$288
Shirley Wilbur
Shirley Wilbur
1972
43,110
10,778
2,155
1973
25,580
6,395
1,279
1974
25,420
6,355
1,271
1975
37,841
9,460
1,892
1976
50,210
12,553
2,510
Tandy Wilbur
1972
16,437
4,109
822
1973
8,950
2,238
448
1974
8,813
2,203
441
1975
13,919
3,480
696
1976
19,073
4,768
954
*100 After concessions the only issue remaining for decision is whether income earned from the retail sale of cigarettes and tobacco products (smokeshop income) by members of the Swinomish Indian Community is subject to Federal income taxation. This case was submitted under Rule 122, [2] all facts having been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners Tandy Wilbur and Shirley Wilbur were husband and wife, residing in LaConner, Washington. Petitioners are both enrolled members of the Swinomish Indian Community. Petitioner Shirley Wilbur was authorized and licensed to operate Shirley's Smokeshop (smokeshop) within the boundaries of the Swinomish Indian Reservation by the Swinomish Tribal Senate, the governing body of the Swinomish Indian Community. Taxes and license fees were paid to the Swinomish Indian Community pursuant to tribal ordinances. The land upon which the smokeshop is situated is held by the United States in trust for the Swinomish Indian Community (trust land), subject *101 to a possessory assignment in favor of petitioner Shirley Wilbur. The fair rental value of this land was $5,000 per year during 1971, through and including 1976. This value is based upon rental of the property for use in the operation of a smokeshop or other similar commercial retail enterprise, which represents the highest and best use of the property. The net profit of the smokeshop for the years in question is community property and is as follows: Year
Net Income
1971
$14,516
1972
62,213
1973
47,473
1974
45,522
1975
61,341
1976
77,779
In 1971, petitioners jointly filed a Federal income tax return omitting income from the smokeshop. Thereafter, for the years 1972, through and including 1976, petitioners filed no returns. In the notices of deficiency, the Commissioner determined that the smokeshop earnings were includable in gross income. Section 61 provides that income "from whatever source derived," is subject to Federal income taxation. It is well established that the income of Indians is taxable under this section, "unless an exemption from taxation can be found in the language of a Treaty or Act of Congress." Commissioner v. Walker,326 F.2d 261, 263 (9th Cir. 1964); *102 Jourdain v. Commissioner,71 T.C. 980 (1979), affd. 617 F.2d 507 (8th Cir. 1980); Hoptowit v. Commissioner,78 T.C. 137 (1982), affd. 709 F.2d 564 (9th Cir. 1983). The mere fact that petitioners are Indians will not preclude them from being liable for the payment of income tax. Choteau v. Burnet,283 U.S. 691 (1931); Superintendent v. Commissioner,295 U.S. 418 (1935). In order to prevail, petitioners must point to "express exemptive language in some statute or treaty" showing that they need not include amounts in their gross income. United States v. Anderson,625 F.2d 910, 913 (9th Cir. 1980); Karmun v. Commissioner,82 T.C. 201, 204 (1984). [3] See Welch v. Helvering,290 U.S. 111 (1933). Petitioners have failed to show an express exemption in any Treaty or Act of Congress. Thus we must agree with respondent that income from the smokeshop constitutes *103 taxable income under section 61. Petitioners primary contention is that the Treaty of Point Elliot, 12 Stat. 927, can be construed to provide an exemption from Federal income taxation within Article 12, which states: "The said tribes and bands finally agree not to trade at Vancouver's Island or elsewhere out of the dominions of the United States." The Treaty of Point Elliot and several other treaties made with the western Washington tribes (the "western Washington treaties"), all contain identical language. [4] Specifically, the "western Washington treaties" include the provision quoted above from Article 12. This Court has previously considered the treaty language, the historical circumstances of treaty negotiation, and the intent of Congress toward the taxation of Indians only to find that no treaty or statute exempts petitioner from taxation on the income that he receives from the operation of the smokeshop. Hoptowit v. Commissioner,supra;Cross v. Commissioner, 83 T.C.     (Sept. 27, 1984). See also Hale v. United States,579 F. Supp. 646 (E.D. Wash. 1984); Critzer v. United States,220 Ct. Cl. 43, 597 F.2d 708 (1979). *104 [5] Adhering to the exhaustive list of precedent in this area we forgo still another opportunity to discuss this issue. We hold that smokeshop income earned by members of the Swinomish Indian Community is subject to Federal income taxation. Alternatively, petitioners ask us to exclude the *105 rental value of the land from their smokeshop income under the theory that this is rental income "directly derived" from the land within the meaning of Squire v. Capoeman,351 U.S. 1 (1956). Normally we would not consider this issue because petitioners first raised it in their reply brief. However, the parties did stipulate to the fair rental value and the only purpose of this stipulation was to raise this specific issue. Additionally, respondent had a previous opportunity to fully brief this issue in Cross v. Commissioner, 83 T.C.     (Sept. 27, 1984), a companion case presenting comparable facts. We have carefully considered this issue in Cross and reach the same result here on the basis of our opinion in that case. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. All Rule references are to the Tax Court Rule of Practice and Procedure.↩
3. Cf. Swiger v. Commissioner,T.C. Memo. 1984-228↩ (where the Court restated the requirement of the presence of express language to exempt smokeshop income from taxation).
4. Cf. Davis v. Commissioner,T.C. Memo. 1984-574, n. 5; Landry v. Commissioner,T.C. Memo. 1984-575. The treaties included in our discussion as "western Washington treaties" are as follows: (1) Treaty of Medicine Creek of 1854, 10 Stat. 1132; (2) Treaty of the Quinaielt, 12 Stat. 971; (3) Treaty of Point No Point, 12 Stat. 933; (4) Treaty of Point Elliot, 12 Stat. 927; and (5) Treaty with the Makahs, 12 Stat. 939. These treaties were negotiated by the then territorial governor Isaac Stevens with the western Washington tribes.↩
5. Cf. Davis v. Commissioner,T.C. Memo. 1984-574; Landry v. Commissioner,T.C. Memo. 1984-575; Swiger v. Commissioner,T.C. Memo. 1984-228; Comenout v. Commissioner,T.C. Memo. 1982-40; Gord v. Commissioner,T.C. Memo. 1984-517↩.