T.C. Memo. 2004-278


UNITED STATES TAX COURT


FREDRIC ARLAN DUBRAY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7547-02.          Filed December 13, 2004.


Fredric Arlan DuBray, pro se.

<u>Shelley T. Van Doran</u>, for respondent.


MEMORANDUM OPINION


GOEKE, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's income taxes of $5,050, $6,250, and $5,959 for the
taxable years 1997, 1998, and 1999, respectively.  After
concessions, the remaining issue for decision is whether
petitioner's wage income from Pte Hca Ka, Inc. (the corporation),
is exempt from taxation pursuant to the Treaty With the Sioux,

which is sometimes called the Fort Laramie Treaty of 1868 (the treaty).[1]  We hold this wage income is not tax exempt.

All Rule references are to the Tax Court Rules of Practice and Procedure.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Background

When the petition was filed, petitioner resided in Mobridge, South Dakota.  Petitioner did not file Federal income tax returns for the years in issue.

Petitioner is an enrolled[2] member of the Cheyenne River Tribe of Sioux Indians (the Cheyenne River Sioux).  The Cheyenne River Sioux have a designated reservation which is part of the treaty land.[3]

---

[1]The treaty is known as the Treaty With the Sioux--Brule, Oglala, Miniconjou, Yanktonai, Hunkpapa, Blackfeet, Cuthead, Two Kettle, Sans Arcs, and Santee--and Arapaho, Apr. 29, 1868, 15 Stat. 635.  Among the many signatories of this historic treaty were Gen. William T. Sherman and the great chiefs Sitting Bull and Red Cloud.

[2]The term "enrolled" means that petitioner is listed on the tribal roll as a member of the Cheyenne River Tribe of Sioux Indians.

[3]By Act of Mar. 2, 1889, ch. 405, 25 Stat. 888, Congress created the Cheyenne River Reservation on part of the Great Sioux Reservation land.

During the years at issue, petitioner was employed by the corporation. The corporation was owned and operated by the Cheyenne River Sioux for purposes of restoring buffalo to tribal lands. The corporation raised buffalo on tribal land, and the buffalo were used for various purposes, including slaughter for tribal and public consumption and sale, and for use in tribal ceremonial events. Petitioner's position with the corporation was director of the buffalo restoration project.

During the years at issue, the corporation paid petitioner wages for his services as director and reported those wages to respondent and petitioner via Forms W-2, Wage and Tax Statement. The corporation deducted withholding tax, FICA tax, and medicare from petitioner's wages, and those deductions were also reported on the Forms W-2. The wages paid by the corporation were $33,860, $37,105, and $37,600 for 1997, 1998, and 1999, respectively.

The source of the wages paid petitioner by the corporation is not clearly described in the record, but the wages are not exclusively from revenue related to the buffalo restoration project.

Petitioner also received various other items of income he concedes are taxable to him during the years at issue and are no longer in dispute.

On January 10, 2002, respondent mailed to petitioner a notice of deficiency for the years at issue.  Petitioner timely filed a petition in this Court seeking a redetermination.

Discussion

Petitioner argues that his wage income earned as an employee of the corporation is not subject to Federal income tax as a result of certain provisions of the treaty.  Specifically, petitioner relies upon a phrase in article 2 of the treaty which modifies the description of the treaty lands as "set apart for the absolute and undisturbed use and occupation of the Indians herein named".[4]  It is uncertain whether this provision was intended to exempt the Cheyenne River Sioux Tribe itself from Federal taxation of its income related to the buffalo restoration project, but petitioner's position is weakened by a more basic point.  The caselaw has well established that income earned by an individual member of a tribe from working for the tribe or for a corporation on unallotted tribal land is not exempt even if the income derived by the tribe from the land would be exempt in the hands of the tribe itself.  See, e.g., Holt v. Commissioner, 364 F.2d 38, 41 (8th Cir. 1966) (involving a lease of unallotted land), affg. 44 T.C. 686 (1965).  The position of this Court in

---

[4]Petitioner must show in this regard that the income in question is specifically entitled to an exemption from taxation by treaty or Act of Congress. Squire v. Capoeman, 351 U.S. 1, 6 (1956); LaFontaine v. Commissioner, 533 F.2d 382, 382 (8th Cir. 1976), affg. T.C. Memo. 1975-165.

this regard was well explained in <u>Jourdain v. Commissioner</u>, 71 T.C. 980, 989 (1979), affd. per curiam 617 F.2d 507 (8th Cir. 1980), which states:

> Petitioner's salary did not represent his pro rata share of tribal income.  Rather, his wages were solely for his benefit, obtained through his labor, and we do not believe, therefore, that his wages were directly derived from the land.  Nonetheless, petitioner argues that his management of tribal land is a necessary part of deriving (tax exempt) income from the land, and that to tax his income from management of the land is to thereby indirectly tax the land itself.  However, it does not follow that income received by an employee as compensation for services rendered the tribe is tax exempt because the income earned by the tribe through (in part) his services is tax exempt. * * *

In <u>Jourdain</u>, as support for this position, we cited <u>Fry v. United States</u>, 557 F.2d 646 (9th Cir. 1977), and <u>Walker v. Commissioner</u>, 326 F.2d 261 (9th Cir. 1964), revg. in pertinent part 37 T.C. 962 (1962).  In <u>Walker</u>, the Court of Appeals stated:

> Walker earned the income as an employee of the Gila River Pima-Maricopa Indian Community by performing the duties of elected Treasurer as prescribed by the Community charter and By-laws.  If, under the law, the income of an organization is exempt from taxation, it does not follow that the income received by an employee as compensation for service rendered to such organization is also exempt from taxation. * * *  [<u>Id.</u> at 264.]

Given this precedent, petitioner's wage income is not tax exempt.

We have reviewed petitioner's other arguments and find them without merit.  In light of the above and the other concessions made by petitioner,

<u>Decision will be entered under Rule 155</u>.